| | | |
|---|---|---|
| KIM MOLOCK<br>7 Belfast Road<br>Timonium, Maryland 21093 | * | |
| *Plaintiff* | * | IN THE |
| VS. | * | CIRCUIT COURT |
| AMERICAN CREDIT ACCEPTANCE LLC<br>961 E. Main Street<br>Spartanburg, South Carolina | * | FOR |
| | * | BALTIMORE COUNTY |
| SERVE ON:<br>The Corporation Trust Incorporated<br>351 West Camden Street<br>Baltimore, Maryland 21201 | * | CASE NO |
| *Defendant* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## Introduction

1.  Plaintiff files this lawsuit because of Defendant's improper repossession process. The improper repossession process includes both a defective notice and a failure to properly credit Plaintiff's account with the sale proceeds of the car after the repossession. Plaintiff seeks actual damages, statutory damages, punitive damages and attorney's fees.

## Parties

2.  Plaintiff Kim D. Molock is a real person and resident of Lutherville Timonium, in Baltimore County, Maryland.

3.  Defendant American Credit Acceptance LLC, (ACA), is a foreign corporation doing business in Maryland with corporate headquarters located at 961 E. Main Street, Spartanburg, SC, 29302.

## Factual Allegations

4. In November 2011, Ms. Molock purchased on credit a used 2004 Mitsubishi, VIN 4A4MN21S24E027667, (the vehicle) from Select Auto Sales in Fredericksburg, Virginia.

5. A true and accurate copy of the Retail Installment Sale Contract (RISC) between Ms. Molock and Select Auto Sales is attached as Exhibit A.

6. Select Auto Sales assigned its rights and obligations under that RISC to ACA, and at all pertinent times ACA was standing in the shoes of the creditor of that contract.

7. Pursuant to Paragraph 6 on page 4 of that RISC, federal law and the law of Virginia apply to this contract.

8. The RISC allows for late charges to be assessed against the account for payments more than five days late.

9. The RISC does not provide for other charges to be assessed against the account.

10. ACA repeatedly assessed a $25.00 "other charge" to the account and Ms. Molock paid this other charge.

11. Pursuant to Paragraph 3(e) on page 3 of the RISC, if the vehicle is repossessed then the creditor agreed to inform Ms. Molock of the amount to pay to redeem the vehicle.

12. Pursuant to Paragraph 3(f) on page 4 of the RISC, if the vehicle is repossessed and not redeemed by Ms. Molock, then the creditor agreed to send a written notice of sale before selling the vehicle, to sell the vehicle, and to apply the proceeds of the sale to the amount owed.

13. On November 6, 2012, ACA, by its agents, repossessed the vehicle.

14. By letter dated November 7, 2012, ACA informed Ms. Molock that to redeem the vehicle she would have to pay $1941.39 and some unspecified amount of storage charges per day.

15. A true and accurate copy of the November 7, 2012 letter is attached as Exhibit B.

16. Exhibit B does not identify the total amount necessary to redeem because it does not state the storage charges that will be assessed.

17. By letter dated November 23, 2012, ACA informed Ms. Molock that it would sell the vehicle at private sale at an unspecified date and unspecified place.

18. A true and accurate copy of the November 23, 2012 letter is attached as Exhibit C.

19. ACA never provided Ms. Molock with the date or location for a private sale of the vehicle.

20. At an unknown place and time prior to March 2013, ACA sold the vehicle.

21. ACA never provided Ms. Molock with an accounting of the sale of the vehicle.

22. ACA did not apply the proceeds of the sale of the vehicle to her account.

23. As of February 28, 2013, ACA reported to TransUnion, a consumer reporting agency, that $12,404.00 was still owed on the account, that $497.00 was the monthly payment due, that the last payment was December 26, 2012, and that $3,009.00 was past due.

24. This reporting was inaccurate because ACA failed to apply the proceeds of the sale of the vehicle to the account, and the full balance had been previously accelerated such that no monthly payment was due.

25. In March 2013, Ms. Molock disputed the reporting of this account by letter to both ACA and TransUnion.

26. Attached as Exhibit D is the dispute letter to TransUnion.

27. Attached as Exhibit E & F are Plaintiff's letters to ACA. Exhibit E is a request for accounting letter sent March 7, 2013, and Exhibit F is the credit reporting dispute letter to ACA sent March 14, 2013.

28. Exhibit C does not identify the total amount necessary to redeem because it does not state the storage charges that will be assessed.

29. ACA has never provided the requested accounting.

30. On March 26, 2013, TransUnion provided a report that ACA had provided new information as a result of the dispute.

31. The new reported information was that the balance now was $11,815.00, with the last payment made still showing as December 26, 2012.

32. This new information is still inaccurate because it does not account for the proceeds of the sale of the vehicle.

33. The inaccurate reporting of this credit causes harm to Ms. Molock.

## CLAIMS FOR RELIEF

### Count I- Violation of the Virginia Consumer Protection Act (VCPA)

34. Regarding the financing of the car, both the original seller and ACA were suppliers in a transaction regulated by the Virginia Consumer Protection Act, Va. Code § 59.1-196 et seq.

35. Ms. Molock was a consumer in a transaction regulated by the Virginia Consumer Protection Act, Va. Code § 59.1-196 et seq.

36. Under Va. Code § 6.2-311, the creditor in such a closed-end installment credit plan could impose finance charges at such "rates as the seller and purchaser have agreed."

37. Because the RISC did not provide for the $25.00 "other charge" to be assessed, ACA could not assess or collect that charge.

38. ACA violated Va. Code § 59.1-200(A) (13) and (14) by assessing charges that were not provided for in the RISC.

39. ACA further violated Va. Code § 59.1-200(A)(14) by sending Exhibit B, the letter dated November 7, 2012, that failed to identify the full amount to redeem the vehicle, and which on the second page stated that the exact amount could be obtained by calling "the telephone number above" even though no number was provided.

40. ACA violations were willful.

41. In the alternative of the violations being willful, the violations were not the result of *bona fide* error notwithstanding the maintenance of procedures reasonably adopted to avoid a violation.

42. If the violations were unintentional under Va. Code § 59.1-207, Plaintiff is still entitled to restitution and payment of attorney's fees and court costs.

43. Each of these violations of the VCPA caused a loss to Ms. Molock.

44. Under Va. Code § 59.1-204, Ms. Molock is entitled to recover her actual damages, statutory damages, and attorney's fees.

### Count II- Violation of the Uniform Commercial Code

45. Under the Uniform Commercial Code and the terms of the RISC, ACA was required to identify the method and time of the intended sale of the vehicle.

46. Exhibit C, the letter dated November 23, 2012, violates Va. Code § 8.9A-613(1) because it fails to identify the time after which the intended private sale will occur.

47. ACA did not dispose of the vehicle in a commercially reasonable manner.

48. ACA never applied the proceeds of a commercially reasonable sale to the account.

49. ACA's failure to provide the accounting that was requested by Ms. Molock violates Va. Code § 8.9A-616(b)(1)(B) such that it should have sent the required notice under

Va. Code § 8.9A-616(b)(2) and Ms. Molock is entitled to the benefit of the 8.9A-616(b)(2) notice.

50. Under Va. Code § 8.9A-625(c)(2), Ms. Molock is entitled to recover ten percent of the principal obligation plus the credit service charge ($1,359.20 plus $8,295.80 equals $9,655.00).

### Count III- Violation of the Fair Credit Reporting Act

51. In this transaction, ACA was a furnisher who provided information to a credit reporting agency.

52. Ms. Molock sent dispute letters to both ACA and TransUnion that qualified as requests for reinvestigation of the information furnished by ACA to TransUnion.

53. ACA received notice of this dispute.

54. ACA failed to reasonably investigate and respond to the dispute about how it was reporting her account.

55. ACA failed to properly inform the credit reporting agency about the accurate information about the account.

56. ACA also failed to report that the account had been disputed.

57. ACA violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes of the reporting about her account.

58. ACA violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agency when conducting that investigation of the dispute.

59.   ACA violated the FCRA, 15 U.S.C. §1681s-2b(1)(C) and (D) by reporting the account with Trans Union without also including a notation by it that this debt was disputed and by failing to correctly report results of an accurate investigation.

60.   ACA's conduct, actions and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, ACA was negligent, entitling Ms. Molock to recover under 15 U.S.C. §1681o.

61.   Under 15 U.S.C. § 1681n and 1681o, Ms. Molock is entitled to recover her actual damages, statutory damages, punitive damages, attorneys' fees and costs.

### Prayer for Relief

Plaintiff requests that this Court do the following:

1. Accept jurisdiction of this matter;

2. The Court award damages in excess of $75,000 including:

   - Award actual damages under the VCPA and FCRA claims;

   - Award minimum statutory damages of $500.00 for each violation of the VCPA if higher actual damages are not awarded;

   - Award treble actual damages, or at minimum $1,000.00 for each willful violation of the VCPA;

   - Award up to $1,000.00 statutory damages under the FCRA unless higher actual damages are awarded;

   - Award punitive damages under the FCRA;

   - Award $9,655.00 under the UCC claim; and

   -Order that ACA has no further right to seek any deficiency

3. Award costs and attorney's fees under the VCPA and the FCRA;

4.   Award such other relief as the Court deems appropriate.


Respectfully submitted,

/s/ Jane Santoni

Jane Santoni
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
(410) 938-8668 (fax)

_____
Thomas D. Domonoske, VSB No. 35434
461 Lee Avenue
Harrisonburg, Virginia 22802
(540) 442-7706
Counsel for Plaintiff

DEMAND FOR JURY TRIAL

Plaintiff hereby requests a trial by jury.

_____
Jane Santoni

RECEIVED AND FILED
2013 AUG -2 A 1:20
CLERK OF CIRCUIT COURT
BALTIMORE COUNTY